## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MYRA DEGERSDORFF**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO: 11-2301**

**THE RITZ-CARLTON HOTEL**                        **SECTION: "A" (4)**
**COMPANY, LLC**

### ORDER

Before the Court is Defendant, Ritz-Carlton Hotel Company, LLC's, ("Ritz") Ritz-Carlton's

**Motion for Partial Reconsideration of the Court's Rulings on Plaintiff's Motion to Compel and**

**for Sanctions and Supplemental Memorandum in Opposition to Plaintiff's Motion to Compel**

**and for Sanctions (R. Doc. 81)**, seeking partial reconsideration of the Court's Orders compelling

production of documents for *in camera* review (R. Doc. 80), as well as production of those

documents to opposing counsel.  (R. Doc. 89).  The motion is opposed (R. Doc. 82).  The motion

was noticed for submission on November 14, 2012, and continued to November 21, 2012, at which

time it was considered on the briefs.[1]

I.    **Background**

    A.    **Allegations in the Complaint**

Plaintiff, Myra deGersdorff, ("deGersdorff") filed this suit against Ritz on September 14,

2011.  (R. Doc. 1).  DeGersdorff alleges violations of the Civil Rights Act of 1964, 42 U.S.C. §

---

[1]The Court notes that although the discovery deadline in this matter was November 13, 2012 (R. Doc. 18, p. 1), neither party moved to expedite the instant motion.  Therefore, it was theoretically impossible for the Court to have adjudicated this motion prior to the discovery deadline.

2000e *et seq.* ("Title VII").  She further alleges that she became an employee of Ritz since 1989, and was an executive in the company in several cities over a nineteen-year period. (R. Doc. 1, p. 3).[2] In 2006, she alleges that she became General Manager of three Ritz hotels located in New Orleans, Louisiana, even though her male predecessor, Ezzat Coutry ("Coutry") had been given the title of "Area Manager" over the same three hotels, which carried more responsibility.  *Id.* at 3.  During her time as General Manager, she alleges that she won an inter-company award and was commended by a number of her superiors for her efforts in caring for stranded guests during Hurricane Katrina. *Id.* at 4.

Beginning in June 2006, she alleges that Ritz accused her of making a series of remarks to her male coworkers, such as "don't be a pussy," for which she was disciplined.  *See id.* at 4-5.  She alleges that similarly situated male coworkers were not also disciplined when they made similar statements.  *See id.*  She further alleges that in September 2008, she was falsely accused of misusing company property, for which she was disciplined even after offering exculpatory evidence.  *Id.* at 5-6.  Shortly thereafter the September 2008 incident, she alleges that she was accused of making an inappropriate comment about a Halloween party to be held at her house for company employees, which pertained to a half-costumed mannequin and a "strap-on tool."  *Id.* at 6.  She alleges that this comment occurred at a closed-door steering committee meeting.  *Id.*

She alleges that Ritz investigated the last two incidents, and concluded that (1) deGersdorff did not misuse company assets, (2) her behavior at the Halloween party was not inappropriate, and (3) she did not discriminate against employees who did not celebrate Halloween.  *Id.* at 7. Moreover, she alleges that she had never been disciplined by Ritz prior to transferring into Coutry's

---

[2]She alleges that she did take one brief interlude to work at a small airplane company. R. Doc. 1, p. 3).

jurisdiction.  *Id.* at 4.  Nevertheless, she alleges that Ritz terminated her employment partially on the basis of these statements.  *Id.*

DeGersdorff alleges that after her termination she was replaced at the New Orleans Ritz by Russell Miller ("Miller"), a close friend of Coutry.  *See id.* at 8.  After that time, she alleges that Ritz's conduct enforcement standards became decidedly more relaxed.  For example, Miller ordered Ritz employees to load five pick-up trucks with hotel furniture, and deliver the furniture to his private residence.  *See id.* at 8.  She alleges that at the conclusion of Ritz's investigation of that incident, the company allowed Miller to merely return the furniture and keep his position.  *See id.* at 9.  She alleges that this is simply another case of Ritz's systemic gender discrimination: although nationwide 55% hotel management school graduates are women and over 30% of the luxury hotels are led by women, only 7% of Ritz hotels are led by women.  *See id.* at 10.

Based on these factual allegations, deGersdorff asserts violations of Title VII, specifically 42 U.S.C. § 2000e(a)(1).  She alleges to have suffered damages in the form of lost pay, loss incurred by her relocation to find new employment, as well as for mental anguish.  *Id.* at 10.  She has also raised a claim for attorney's fees pursuant to 42 U.S.C. § 2000e(5)(k).  *Id.* at 11.[3]

### B.  The Court's Order Regarding the Original Discovery Request

On August 22, 2012, after hearing on a motion to Compel, the Court ordered Ritz to produce certain documents to the Court for *in camera* review.  Upon review of the documents produced to the Court, the Court found that Ritz had failed to provide all requested documents to the Court, and had not sought clarification by obtaining a copy of the transcript of the hearing.  (R. Doc. 80, p. 31).  Therefore, the Court ordered Ritz to produce documents responsive to deGersdorff's Requests for

---

[3]DeGersdorff cites to "42 U.S.C. 200e(5)(k)." R. Doc 1, p. 11.

Production of Documents Nos. 34, 35, and 36 (documents relating to Miller) to the Court for *in camera* review.  (R. Doc. 80, p. 32).  The Court also ordered documents responsive to Nos. 14, 16, 17, 18, 43, 45, 94, and 95 (documents relating to Kathy Smith, John Rolfs, Ed Staros, and Marco Selva) to be produced into the Court for *in camera* review.  *Id.*  The Court also imposed sanctions on Ritz's counsel for failing to timely comply with its orders at the August 22, 2012 hearing.

The Court, upon completing its *in camera* review, deemed production of Nos. 14, 16, 17, 18, 43, 45, 94, and 95 satisfied, and ordered Ritz to produce documents responsive to Nos. 34, 35, and 36 to deGersdorff.  (R. Doc. 89).

As to the instant motion, Ritz seeks partial reconsideration of the Court's Orders compelling production of documents for *in camera* review (R. Doc. 80).  The motion is opposed, (R. Doc. 82) and Ritz has filed a Reply (R. Doc. 88).  The motion considered on the briefs on November 21, 2012.

## II.   <u>Standard of Review</u>

No Federal Rule of Civil Procedure ("Rule") "provide[s] for a 'Motion for Reconsideration' but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment."  *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998).

Reconsideration of judgments under Rule 59(e) is an extraordinary remedy, which should be used sparingly.  *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479-480 (5th Cir. 2004).  Specifically, it "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.* at 478 (citation omitted).  Instead, it "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact

4

or to present newly discovered evidence." *Id.* at 479.   Other courts have found Rule 59(a) "judgment" standards equally applicable.  *See, e.g.*, *Hybrid Kinetic Automotive Holdings, Inc. v. Hybrid Kinetic Automotive Corp.*, 643 F. Supp. 2d 819, 828-29 (N.D. Miss. 2009); *Campbell v. National Development Co., Inc.*, 2012 WL 1600431, at *1 (S.D. Tex. May 3, 2012).  However, the Fifth Circuit "will not imply a finding of fact where the court's statements and rulings suggest it did not resolve the question." *Maxam Ltd. v. Lane*, 51 Fed. App'x 929, 2002 WL 31415291, at *4 (5th Cir. Oct. 14, 2002) (Table, text in Westlaw).  Moreover, a motion for reconsideration, if requested broadly, may be narrowed to cover only those portions of an Order which were detrimental to the movant.  *See Henderson v. Turner*, No. 11-0039, 2012 WL 5354616, at *3 (M.D. La. Oct. 29, 2012) (Roby, M.J.) ("It would be counterintuitive for the [movant] to request reconsideration of any portion of the Court's Order which [it] prevailed on.").

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is

5

unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id.* at 26(b)(2)(C)(iii).

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A).  This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A).

## III.   <u>Analysis</u>

### A.   <u>Preliminary Issues</u>

#### 1.   **Selection of Standard - Rule 59 or Rule 60**

The first preliminary issue is whether Rule 59 or Rule 60 should apply to this case.  When determining whether to evaluate a party's motion to "reconsider" under Rule 59 or Rule 60, Fifth Circuit courts commonly adjudicate motions to "reconsider" under Rule 59(e) when they are filed within 10 days of the Court's Order. *Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *aborgated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 & n.14 (5th Cir. 1994); *Bass v. United States Dep't of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000).

Here, the Court's Order at R. Doc. was entered on October 25, 2012, and Ritz's motion for

Reconsideration was filed four days later, on October 29, 2012.  Therefore, the Court should evaluate Ritz's motion under Rule 59.[4]

## 2.        Scope of Ritz's Motion for Reconsideration

Ritz seeks "reconsideration" of the Court's Order to the extent that it ordered production of documents pertaining to the files of Miller, Smith, Staros, Selva, and Rolfs.  (R. Doc. 81-1, p. 10).  However, the Court's Order following *in camera* review stated that Ritz had satisfied its disclosure obligations as to Smith, Staros, and Selva.[5]  Therefore, the Court's Order regarding production of documents pertaining to these individuals is moot.  As such, the Court finds that "reconsideration" of its motion is irrelevant insofar as it would address production of the files of Smith, Staros, and Selva.  Accordingly, the scope of Ritz's motion for reconsideration is whether the Court erred in compelling the production the personnel file of Miller.  (R. Doc. 81-1, p. 3).  It also includes a limited selection of records from the file of John Rolfs.[6]

_____

[4]The Court notes that its Order following *in camera* review was issued after Ritz filed its Motion in Opposition.  Ritz's Reply was filed on the same day that the Court issued its Order regarding *in camera* review.

[5]Because Ritz's statements to the Court were vague, the Court made several explicit assumptions in order to reach the conclusion that Ritz had complied with its production obligations.  (R. Doc. 89, pp. 2-4).  The Court also noted that Ritz had the affirmative duty to inform the Court if its assumptions regarding Ritz's language were incorrect, and that if Ritz failed to do so within a specified time period, the Court would consider imposing sanctions pursuant to Rule 37(b).  *Id.*  To the degree that Ritz's motion for "reconsideration" challenges the imposition of this affirmative obligation, the Court finds that it is entirely speculative as no specific action has been taken.

[6]Ritz also states that its Motion for Partial Reconsideration may "also serve[] as a supplemental opposition to Plaintiff's Motion to Compel and for Sanctions."  (R. Doc. 81).  The Court notes that such "briefing" would be clearly untimely under normal circumstances.  *See* Local Rule 7.5 ("Each party opposing a motion must file and serve a memorandum in opposition to the motion . . . no later than eight days before the noticed submission date.").  Further, the Court notes that the applicable standard states that Rule 59 "is not the proper vehicle for rehashing evidence, legal theories, or arguments that *could* have been offered."  *Templet*, 367 F.3d at 479-480.  Further, a Ritz consented to argument, the Court permitted supplemental briefing.  The Court then noted in its Order on the Motion to Compel that deGersdorff failed to submit supplemental briefing for over two months after the hearing.  (R. Doc. 80, p. 15).  It then characterized the issue of supplemental briefing as "abandoned."  The Court need not revisit this issue now.

B.      **Merits of Motion**

    1.      **Russell Miller's File (Nos. 34, 35, 36)**

        a.      **Ritz's New Evidence**

Ritz argues that in its *new* evidence indicates that Miller obtained permission to use Ritz's furniture *prior* to having it removed from Ritz's premises and installed for his personal use. Specifically, Ritz attaches the affidavit of Rob Drawbridge, who assists in "asset management" of Ritz. Drawbridge states that Coutry obtained permission from Ritz's owners to use the furniture, and was told by Ritz's management that not only that he could he use the furniture, but he could also enlist the services of Ritz employees while doing so. (R. Doc. 88-1, p. 9). This is supported by the deposition of Kevin Richeson, Ritz's corporate investigator, who states that its investigation of Miller's use of the furniture established that he had the owners' prior permission to use it. (R. Doc. 81-7, p. 3). Country substantiated this position in his own deposition. (R. Doc. 81-8, p. 3).[7] Ritz argues that even if Miller is technically deGersdorff's "comparator" in that both employees had similar job titles and had one similar allegation, deGersdorff was subject to "multiple investigations which substantiated allegations" of misconduct, whereas Miller had not. (R. Doc. 88, p. 3).

In opposition, DeGersdorff argues that Coutry stated, in his deposition, that the reason that Ritz disciplined supervisors for using Ritz staff on personal errands was because it took staff out of the hotel where they were needed. (R .Doc. 82-6, pp. 8-9).

Ultimately, the Court notes that the issue of prior *permission* is not the central issue here, because this permission was not clear at the time Miller took the furniture, Ritz employees

---

[7]Ritz has also submitted an affidavit from Miller, which stated that he had the owners' prior permission to use the furniture. (R. Doc. 88-2).

complained, and Ritz conducted an investigation.  Even if later exonerated, deGersdorff is entitled

under Rules 26 and 34 to obtain evidence "relevant" to her claims, and should have the opportunity

to compare evidence of Ritz's investigation of her successor General Manager, Miller, to her own

investigation. Therefore, Ritz's "new evidence" does not suffice to preclude production of Miller's

file.

### b.    Similar "Offense"

In support of its Motion, Ritz also argues that subsequent depositions and affidavits collected

in this case indicate that deGersdorff and Miller are not "comparators" for purposes of Title VII, and

that Miller's personnel file should not be produced on those grounds.  (R. Doc. 81-1, pp. 1-2).[8]  Ritz

argues that in order for deGersdorff and Miller to be "comparators," the underlying *allegations* of

conduct must be "nearly identical."   *Id.* at 7.   However, Ritz argues that it did not accuse

deGersdorff of stealing property, and did not terminate her employment for doing so.  (R. Doc. 81-1,

p. 7).[9]

In opposition, deGersdorff argues that she and Miller were subject to the same progressive

discipline standards.  *Id.* at 5.  On one occasion, deGersdorff authorized Ritz employees who were

on an off-site company outing to order food from Ritz's dining room, which led to deGersdorff's

written warning.  *Id.* at 5-6.  DeGersdorff argues that because she is aware that Ritz employees

voiced complaints regarding Miller's use of Ritz company furniture for his own home, as well as

the labor of Ritz engineers to move the furniture.  *Id.* at 6.  Moreover, deGersdorff argues that

---

[8]Although Ritz couches its argument regarding the legal standard as stemming from counsel's failure to provide the Court with the appropriate legal standard at oral argument because deGersdorff raised new issues at the motion hearing, the Court finds that this argument may also be raised in connection with the "manifest error of law" standard on a Motion for Reconsideration.

[9]Ritz argues that deposition testimony supports this result, as well as the fact that Deon Danna, the former Ritz employee who lodged the anonymous complaint against Miller, will not be testifying for either party.

Miller's conduct is arguably more severe, because acquiring the furniture did not further any "hotel business." *Id.* at 7. Further, deGersdorff argues that Miller should have been investigated for abuses similar to those deGersdorff was ultimately terminated for - as Ritz employees complained that in addition to removal of furniture, Miller (1) instructed Ritz employees to transport and install his home appliances and fix his electronic equipment; (2) hired Ritz contract workers to clean his home; and (3) used abusive language towards a Ritz employee. (R. Docs. 82-7, p. 1).

The Fifth Circuit has found that employees "who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 260 (5th Cir. 2009). To be similarly situated with respect to discipline, employees must have "essentially comparable violation histories" and the conduct in question must be "nearly identical." *Id.* To be "nearly identical," employees must violate the same aspects of a company's personnel policy. *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990).

Here, Ritz's own filings do not definitively state that she and Miller purportedly "violated" different sections of the policy, either with respect to Ritz's "new" evidence, or the evidence previously submitted. For example, the plain language of deGersdorff's termination letter, which was attached to prior motions, states the following:

> We recently received allegations that you engaged in unprofessional behavior in the workplace, *including* making inappropriate comments of a sexual, religious and racial nature and the use of profane language. We conducted a prompt and thorough investigation into *these* concerns and found that you engaged in conduct that violates the Company's Policy on Harassment and Professional Conduct. *For example*, during a weekly staff meeting in October 2008, you made comments regarding a Halloween party to be held at your home in which you referenced a "strap-on." You have also sent inappropriate e-mails which contained offensive content of a racial nature. This conduct offended several of the employees at the Hotel and is in direct violation of previous warnings that have been issued to you about conducting yourself in a professional manner.

> *Your behavior* has violated the Company's standards and policy on Harassment and
> Professional Conduct. Consequently, the Company is issuing you a written warning.
> This is the second written warning issued to you within the last 12 months and
> therefore results in the termination of your employment.

(R. Doc. 81-1, p. 8 (emphasis added). From the above, Ritz terminated deGersdorff's employment

due to her "unprofessional behavior," which *included* making inappropriate comments, but which

did not specifically *limit* the scope of "unprofessional behavior" to such activities. Similarly, Ritz's

termination letter indicates that it investigated "these" concerns without specifying what the

concerns were. Several of "these" concerns were used as examples supporting Ritz's decision to

terminate deGersdorff's employment. However, instead of limiting its termination decision to these

specific "examples," Ritz states only that deGersdorff's "behavior" has triggered the written warning

which terminated her employment.

Tellingly, at oral argument on the underlying motion, the parties argued that deGersdorff had

been censured by Ritz for taking food from Ritz's company functions, and for drinking on company

property while "entertaining guests." (R. Doc. 90, p. 15). Specifically, counsel for Ritz represented

that "a whole gist of things . . . led to [deGersdorff] being terminated." *Id.* These included the fact

that deGersdorff, while onsite, was "drinking . . . smoking . . . cussing . . . and she was sending

offensive emails, and she was being abusive to subordinates." *Id.* Also at the hearing, counsel for

deGersdorff argued that she had received a warning under Ritz's progressive discipline policy for

"misuse" of an asset. *Id.* at 6. This "misuse" referred to an instance in which deGersdorff and

several Ritz managers at an offsite "employee relations outing" ordered food from the nearby Ritz

dining room. (R. Doc. 82-6, pp. 4-7).

As noted above, Coutry, who supervised both deGersdorff and Miller, stated that this

behavior qualified as "misuse" because was "totally unacceptable" to take staff out of the hotel,"

because "[y]ou are really taking them out of operation to deliver something for personal use." *Id.* at 5. However, deGersdorff argues that Miller engaged in similar "misuse" when he took Ritz engineers offsite to transport Ritz furniture to his new home. (R. Doc. 82-1, p. 6; 82-7, p. 1). Again, this issue in the instant motion is whether deGersdorff's discovery request was "reasonably calculated" to result in the production of relevant evidence. Based on the open-ended nature of Ritz's termination letter, the Court cannot say that discovery of Miller's personnel file does not reflect the same.[10]

In sum, deGersdorff should have the opportunity to collect documents which support her claim: specifically, that she was treated differently than similarly situated managers who used abusive language and undertook activities with Ritz's "tacit permission" that may have exceeded their authority. Ritz's motion for reconsideration of its Order regarding Requests for Production Nos. 34, 35, and 36 and Documents Nos. RC-001529-001574 is denied.

### 2.      John Rolfs' File (No. 45)

In support of its Motion, Ritz does not assert that deGersdorff and Rolfs are not comparators, nor does it present any "new evidence" into the record. Instead, Ritz's argument against producing Rolfs' file is that Ritz "will shortly provide a copy" of the relevant documents to Plaintiff, "making

---

[10]Moreover, the "unprofessional behavior" referenced in deGersdorff's open-ended termination letter included on-site drinking, while on duty. (R. Doc. 81-5, p. 1). *Id.* Accusations of drinking on company property are reflected in deGersdorff's first written warning, which is supported by complaints levied against her. *See* (R. Docs. 81-2; 81-3). However, both Ritz and deGersdorff agree that it was within the scope her duties as the General Manager to entertain business guests and corporate clients; Ritz, and *several Ritz employees*, simply viewed deGersdorff as abusing her privilege by drinking to excess. *Id.* at 6-7. This suggests that deGersdorff *had Ritz's permission* to consume moderate amounts of alcohol while serving in her role as corporate host to Ritz's guests and business partners; the accusations were that she simply drank too much while in that role. Similarly, even if Miller clearly had the owners' prior permission to use the furniture in question for a short period while his own furniture was en route from the Bahamas, it is entirely unclear whether he had the permission to use Ritz's vehicles to transport the furniture, nor conscript Ritz employees to transport it, nor keep it in his home as long as he did. This behavior clearly rankled several Ritz employees, who complained on the same basis.

this Court's *in camera* inspection and ruling on the discoverability of these documents unnecessary." (R. Doc. 81-1, p. 11).

There are several reasons why the Court finds this argument insufficient. First, the Court has now conducted its *in camera* review of Rolfs' file, which renders Ritz's argument moot. *See* (R. Doc. 89). Second, Ritz provides no authority supporting its counterintuitive conclusion that the Court should overturn its prior order based on Ritz's wholly unspecified promise to produce documents to deGersdorff "shortly." Third, even if such authority existed, Ritz has previously failed to timely provide discovery to deGersdorff within the time period specified by the Court at oral argument. *Compare* (R. Doc. 80, p. 21) (noting that Ritz was to produce documents pertaining to Kathy Smith no later than fourteen days after the August 22, 2012 hearing date), *with* (R. Doc. 81-1, p. 10 (stating that Ritz provided such documents to deGersdorff on September 14, 2012). Given Ritz's failure to abide by the Court's discovery Order, the Court finds Ritz's "promise" to be completely meritless; notably, it has received no response, since the filing of its motion for reconsideration, that it in fact produced the Rolfs-related documents to deGersdorff. The documents shall now be produced pursuant to this Court's Order.

## IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Defendant, Ritz-Carlton Hotel Company, LLC's, ("Ritz") Ritz-Carlton's **Motion for Partial Reconsideration of the Court's Rulings on Plaintiff's Motion to Compel and for Sanctions and Supplemental Memorandum in Opposition to Plaintiff's Motion to Compel and for Sanctions (R. Doc. 81)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant, Ritz-Carlton Hotel Company, LLC, ("Ritz")

13

shall produce the following documents to Plaintiff, Myra deGersdorff, ("deGersdorff") in connection

with the following claims:

       First Request for Production No. 34: RC-002152-60.
       First Request for Production Nos. 35, 36: RC-001529-1574, as originally redacted.
       First Request for Production Nos. 35, 36: RC-001568, unredacted.
       First Request for Production No. 45: RC-001907-08.

       **IT IS FURTHER ORDERED** that Ritz shall produce the above-specified documents to

deGersdorff **no later than five (5) days** after the issuance of this Order, **Tuesday, December 11,**

**2012**, at **5:00 p.m.**

       New Orleans, Louisiana, this 6th day of December 2012.

                             **KAREN WELLS ROBY**
                     **UNITED STATES MAGISTRATE JUDGE**